UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LUIS BRAVO**<br>**Plaintiff,**<br><br>– against –<br><br>**UNITED STATES OF AMERICA**<br>**Defendant,** | **Civil Action No.**<br><br>**COMPLAINT FOR VIOLATION OF**<br><br>**CIVILRIGHTS UNDER 42 USC § 1983**<br><br>- **6TH AMENDMENT VIOLATION**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

Plaintiff Luis Bravo brings this civil rights action under 42 USC § 1983 for violations of his civil rights under the United States Constitution. On September 23, 2019, Plaintiff Bravo was arrested in the Dominican Republic as a fugitive on the from New York City. A few days later, the government was informed that Plaintiff Bravo was not a fugitive and was living overseas as an expat since 2012.

After surviving a ten-day detention in an inventory closet / cage, Plaintiff Bravo was returned to the Southern District of New York to face his criminal charges. (*United States vs Bravo*) Before Plaintiff Bravo had his arraignment, he had endure three more days in detention in New York City. Two of those days Plaintiff Bravo sat in a cell with no food or water while holding a court order. This order was Plaintiff Bravo's release on bond after an international manhunt that included the military of a foreign nation. Unfortunately, Plaintiff Bravo just sat in a cell instead of being released to seek medical care for his life-threatening illness he caught during his pre-arrangement detention in the inventory closet / cage.

1

Upon Plaintiff Bravo's release, his health broke down and was in the care of family members until his arraignment. During his arraignment, Plaintiff Bravo was informed his was being prosecuted for:

- Bank Fraud
- Mail Fraud
- Wire Fraud

Before Plaintiff Bravo attended his arraignment, the Postal Agent who filed charges against Plaintiff Bravo showed him a photo of a man in a New York bank at the teller window committing:

- Bank Fraud
- Mail Fraud

That man was at a bank teller window with mail in his hands about to deposit checks into that bank.

At arraignment, Hon, Judge Woods asked the government / Defendant USA:

- "Who was actually at the bank depositing the checks?"

The government / Defendant USA replied on court record it was unknown.

Unfortunately, Plaintiff Bravo's prosecution moved forward and the answer to who was at the bank committing Bank Fraud and Mail Fraud would have to wait for discovery a few weeks down the road. That discovery unfortunately never took place, a few weeks into Plaintiff Bravo's prosecution, COVID-19 forced the court shutdown. This left Plaintiff Bravo locked out of the courthouse until he was forced to take a guilty plea **1 YEAR AND 10 MONTHS AND 8 DAYS LATER** in clear violation of his 6th Amendment right to a fair and speedy trial. Plaintiff Bravo was not even allowed to phone or video conference under the **CARES ACT** further violating his 6th Amendment rights.

## PARTIES

1. Plaintiff Luis Bravo herein after referred to as Plaintiff Bravo. Plaintiff Bravo was arrested in the Dominican Republic and brought by the U.S. Government to New York in October 2019. Before then, Plaintiff Bravo was an American citizen living overseas since 2012. Plaintiff Bravo is now a resident of New York for the duration of his federal probation of three years.

2. The United State of America is named as a Defendant in this action for the Sixth Amendment violations committed by its departments and personnel tasked with the judicial process and prosecution of Plaintiff Bravo. Defendant United State of America is hereinafter referred to as Defendant USA.

## JURISDITION

3. This action is authorized by 42 U.S.C. § 1983. Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) because this action seeks redress for violations of Plaintiff Bravo's civil rights under the United States Constitution by agents and employees of Defendant USA.

4. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights ofthe parties and to grant all further relief deemed necessary and proper.

5. Venue is proper in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff Bravo's claims occurred in the Southern District of New York.

## ALLEGATIONS OF FACTS

6. The Sixth Amendment of the United States Constitution is what separates our country from the darkness of countries that embrace indefinite detention, justice delayed is justice denied. The constitutional right to a **FAIR AND SPEEDY PUBLIC TRIAL** - is the foundation of our adversarial criminal justice system. The right to challenge the government's evidence and confront witnesses in a meaningful and **TIMELY** manner gives legal and moral legitimacy to the system as a whole.

7. Unfortunately, Plaintiff Bravo was denied his Sixth Amendment of the United States Constitution. Plaintiff Bravo was arrested and extradited as a fugitive to New York only to be told to wait until it was safe to come back to court. Plaintiff Bravo by this time had already been subjected to life threatening viruses and bacteria during his ten-day detention in an inventory closet / cage with no bathroom or running water. After everything Plaintiff Bravo survived, somehow entering the courthouse with a mask, social distancing and health safety procedures in place was not safe.

8. The COVID-19 made it impossible for normal court operations to continue. This also prevented Plaintiff Bravo's rights to inspect the government's evidence properly as well as suspending all in

person meetings with defense attorneys. The Federal Defenders Office was also shut down along with the Southern District. Plaintiff Bravo unfortunately spent so much time away from his prosecution, that he faintly remembered what his defense team looked like by the time of his sentencing which was **1 YEAR, 8 MONTHS AND 10 DAYS** later.

9. This extended time away from the court also made it impossible to fully prepare for a trial. Everything Plaintiff Bravo would need for trial was now thousands of miles away in the Dominican Republic which was also closed due to COVID-19. There were no personnel inside the offices to contact or to request records or information. This technically shutdown Plaintiff Bravo's discovery dead in its tracks. Without access to proper discovery or anyway of making a proper decision, Plaintiff Bravo was offered to enter into a plea agreement when he was told in person trials would be suspended indefinitely due to COVID-19

10. At this point it was clear Plaintiff Bravo's business operations / staff members committed these illegal acts and Plaintiff Bravo wanted to address the issue and move on with his life. Unfortunately, Plaintiff Bravo's health was deteriorating because he needed to be treated by a physician who treated tropical viruses and diseases. The state of New York does not have physicians that specialize in treating tropical diseases or their after-effects on the brain, heart and liver.

11. The plea agreement seemed like a good way for Plaintiff Bravo to resolve all matters and not put the burden on the government of preparing for a trial. Unfortunately, Plaintiff Bravo had to endure

**1 YEAR, 8 MONTHS AND 10 DAYS** being sick and homeless in New York before he could resolve his prosecution. Defendant USA did not allow Plaintiff Bravo to enter a plea or face trial via phone or video conferencing because somehow he was not "sick enough" to qualify under the **CARES ACT**. Plaintiff Bravo was apparently not sick enough even though he was:

- Diagnosed with a Traumatic Brain Injury after the blow to his head.
- Diagnosed with severe Dengue Virus.
- Diagnosed with an unknown virus-based event to the heart.
- Diagnosed with broken teeth due to seizures in the cage.
- Diagnosed with damage to the lungs due to inhaling raw sewage for ten days.
- Diagnosed with loss of hearing due to contracting Meniere's Disease in the cage.
- Diagnosed with neurological issues such as BLACKOUTS and VERTIGO.
- Diagnosed with body seizures.
- Diagnosed with an injured spine and pelvis resulting in use of a walking aide.
- Diagnosed with severe bacterial infections from sleeping on sewage water.

    12. A few weeks into the COVID-19 court shutdown, Plaintiff Bravo was on a phone scheduled hearing with Hon, Judge Woods. During this phone hearing, Hon. Judge Woods brought up the pending issue of **THE CLOCK**. Hon, Judge Woods was referring to the **Speedy Trial Act / 6th Amendment**. The reply of the government / Defendant USA was that Plaintiff Bravo did not qualify under the **CARES ACT** and needed to appear in person once the court reopened. Plaintiff Bravo was apparently

not sick and injured enough to enter a plea / sentencing or face trial on a phone with Hon, Judge Woods while on the phone with Hon, Judge Woods.

13. Somehow a decision was made by a non-medical professional of Defendant USA that Plaintiff Bravo was not sick and injured enough to qualify under the **CARES ACT**. Even though Plaintiff Bravo's doctors wanted to get him listed as disabled due to his health conditions, the **CARES ACT** was not granted to him. During this time frame, Plaintiff Bravo was seen in the emergency rooms six times, with numerous outpatient doctor visits.

(Section 15002 (b) (1) of the **CARES ACT authorizes** the federal courts, upon a proper findingby the Judicial Conference of the United States that the national COVID-19 emergency "will materially affect the functioning of either the Federal courts generally or a particular district court of the United States," to conduct **video teleconferencing**, or **telephone** conferencing if **video** conferencing is not reasonably available, in a host of **criminal proceedings**, including detention hearings, initial appearances, preliminary hearings, waivers of indictment, arraignments, and misdemeanor **PLEAS AND SENTENCING**.)

14**.** Plaintiff Bravo was already on a telephone hearing with Hon, Judge Woods and could have easily been on a video teleconferencing. By not allowing Plaintiff Bravo to enter a plea or face trial via video teleconferencing or by phone, Plaintiff Bravo's Speedy Trial Act Protections / 6th Amendment were clearly violated by **1 YEAR, 8 MONTHS AND 10 DAYS.** Plaintiff Bravo already phoned, and video teleconferenced every week to his pre-trial officer in the same building as Hon, Judge Woods, so it was unclear why Plaintiff Bravo was not given the same opportunity for a video conference with Hon, Judge Woods.

15. During this very same time frame of the COVID-19 court shutdowns, United States District Judge Hon. Cormac Carney of the Central District of California upheld the Speedy Trial Act Protections / 6th Amendment in the case of *United States v. Olsen*. District Judge Hon. Cormac Carney of the Central District of California:

"The Central District denied Mr. Olsen his constitutional right to a public and speedy trial. It did so not because it was impossible to conduct the jury trial as is required by the Sixth Amendment. It did so because it was fearful people would get sick from the coronavirus. **But no emergency or crisis, not even the coronavirus pandemic, should suspend the Sixth Amendment or any of our constitutional rights.** The Constitution guarantees these rights to us during all times, good or bad. Because Mr. Olsen was denied his Sixth Amendment right to a public and speedy trial, this Court now must dismiss the charges against him, and that dismissal must be with prejudice."

- Recently, the United States 9th Circuit Court of Appeals ruled in *United States v. Allen*, that a defendant's Sixth Amendment right to a public trial was violated when a trial judge allowed an audio stream but not video access to the proceedings. The 9th U.S. Circuit Court of Appeals then vacated the felony gun conviction of defendant James David Allen II.

- On August 9th, 2022, U.S. District Court Judge William J. Martínez admitted that he and the prosecution were at fault for violating the speedy trial rights of a defendant by failing to bring her to trial in time and has consequently dismissed the charges against her. U.S. District Court Judge William J. Martínez did not dispute the calculations of Mykhael Kuciapinski, who determined her case was at least **214 days** beyond the legal deadline for a jury trial. The figure accounted for various exclusions of time that are permissible under federal law. **"Nonetheless, it still exceeded the 70-day deadline established in the Speedy Trial Act."** Although U.S. District Court Judge William J. Martínez attributed the bulk of the unjustified delay to the U.S. Attorney's Office, U.S. District Court Judge William J. Martínez took responsibility for neglecting to rule on certain key requests over the past few years. **(EXHIBIT A)**

16. During Plaintiff Bravo's **1 YEAR, 8 MONTHS AND 10 DAY** prosecution, other Americans had their Speedy Trial Act Protections / Sixth Amendment upheld via the **CARES ACT** while Plaintiff Bravo's right were violated. During this same time period, celebrity actress Lori Loughlin and her husband Mossimo Giannulli, were granted a virtual change of plea hearing and plea / sentencing via **ZOOM VIDEO CONFRENCING** amid the COVID-19 court shutdown of the District Court of Massachusetts. The District Court of Massachusettsis only 219 miles from the Southern District of New York. Lori Loughlin and her husband Mossimo Giannulli were also in perfect health, and they somehow qualified for virtual change of plea hearing and plea / sentencing via Zoom video conference under the **CARES ACT.**

17. Plaintiff Bravo clearly qualified for a remote telephone or video conferencing to enter a plea or face trial. Unfortunately, the Defendant USA did not protect Plaintiff Bravo's Speedy Trial Act Protections / 6th Amendment rights. Plaintiff Bravo was always available to resolve his prosecution. During this exact timeframe, Plaintiff Bravo enter crowded supermarkets, subways and hospitals, but he was not allowed to enter the courthouse with COVID-19 safety protocols in place. At the time of Plaintiff Bravo's sentencing, there was only five people in the court room. Everyone would have been safe **1 YEAR, 8 MONTHS AND 10 DAYS** earlier including the **SIXTH AMENDMENT**.

## CLAIMS FOR RELIEF

### COUNT ONE

### Violations of the Sixth Amendment / Speedy Trial Act Protections

18. Plaintiff Bravo's **1 YEAR, 8 MONTHS AND 10 DAY** prosecution without the ability to enter a plea or seek trial violated Plaintiff Bravo's Speedy Trial Act Protections / Sixth Amendment to the United States Constitution and 42 U.S.C. §1983. Plaintiff Bravo should have been granted access to court / trial proceedings under the **CARES ACT.** Defendant USA not only blocked Plaintiff Bravo's ability to participate in his defense, but it also clearly stripped away his Sixth Amendment rights.

19. If Plaintiff Bravo would not have entered a guilty plea after **1 YEAR, 8 MONTHS AND 10 DAYS,** he might have been still waiting for his day in court two or three years later. Defendant USA had COVID-19 safety procedures in place in the court and could have easily resolved Plaintiff Bravo's Six Amendment violation. If Plaintiff Bravo could be in a crowded subway or supermarket in New York City, he could have been present in court with his attorney and Hon. Judge Woods.

20. By not allowing Plaintiff Bravo to proceed under the **CARES ACT,** Plaintiff Bravo only choice was to take a plea because he would not have access to a trial. When faced with a decision with only one choice available, Plaintiff Bravo had to forget about his right to a trial and his **Speedy Trail**

**Act Protections / The Clock**. This action by the Defendant USA is a clear violation of Plaintiff Bravo's protections under the Sixth Amendment to the United States Constitution and 42 U.S.C. §1983.

## COUNT TWO

## Violations of the Sixth Amendment / Speedy Trial Act Protections

22. Plaintiff Bravo's **1 YEAR, 8 MONTHS AND 10 DAY** prosecution without the ability to properly review evidence against him violated Plaintiff Bravo's Sixth Amendment to the United States Constitution and 42 U.S.C. §1983.

23. The government's evidence against Plaintiff Bravo was kept in offices and computers in closed offices buildings due to the COVID-19 shutdowns of the court and Federal defender's office. Plaintiff Bravo was only allowed to see the evidence once for a few minutes while he was still suffering from a traumatic brain injury and suffering vision problems.

24. The Sixth Amendment guarantees the following rights of criminal defendants:
- The right to a public trial without unnecessary delay.
- The right to a lawyer.
- The right to an impartial jury.

And most importantly, the right to know who your accusers are and the nature of the charges **and evidence against you**.

25. Defendant USA did not allow Plaintiff Bravo access to properly review the evidence against him due to the COVID-19 shutdowns, Plaintiff Bravo could have never properly prepare for a **FAIR TRIAL**. This action by the Defendant USA is a clear violation of Plaintiff Bravo's protections under the Sixth Amendment to the United States Constitution and 42 U.S.C. §1983.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bravo respectfully request this court:

1. Dismiss with prejudice Plaintiff Bravo's criminal conviction for violating his 6th Amendment / Speedy Act Trial protections under the U.S. Constitution and restore all his rights.

Plaintiff Bravo was delayed a total of **1 YEAR, 8 MONTHS AND 10 DAYS** before having to enter a guilty plea with no possibility for a trail due to the COVID-19 court shutdowns. There is no public health exception to the Bill of Rights.

(In *Strunk v. United States*, the U.S. Supreme Court rules that if the Sixth Amendment's speedy trial right is violated, then the Court must dismiss the indictment against the defendant or reverse the conviction. This means that even if a defendant is guilty of the crime, a violation of the speedy trial right demands that he or she be set free.)

## CONCLUSION

Plaintiff Bravo has done everything this government has told him to do from the second he was arrested to the filing of this action. Now Plaintiff Bravo is asking this court to uphold his 6th amendment rights and reverse his criminal conviction. **1 YEAR, 8 MONTHS AND 10 DAYS** without the possibility of trial along with the health and living conditions Defendant USA placed on Plaintiff Bravo was a complete abuse of power by Defendant USA.

During Plaintiff Bravo's prosecution, it was Hon. Judge Woods who raised the issue of Plaintiff Bravo's 6th Amendment rights by reminding the prosecution / Defendant USA of **THE CLOCK.** The court / Defendant USA used the COVID-19 court shutdown to deny Plaintiff Bravo his 6th Amendment rights. Phone and video conferencing access was denied to Plaintiff Bravo in a no-win scenario.

1. He was not allowed to come to court.
2. He was not allowed to view evidence before him.
3. He was not allowed to face his accusers / witnesses.
4. He was not allowed to face his alleged victims.
5. He was not allowed to phone into the court.
6. He was not allowed to video conference into the court.

Justice was not blind in United States vs Bravo.

It was absent.

United States vs Bravo conviction must now be overturned with prejudice.

## **DECLARATION**

I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Sincerely,

Plaintiff Luis Bravo

Luis Bravo

826 Columbus Avenue Apt 13B

New York, NY 10025

Tel: 929 395 3764

Email: louisbravo591@aol.com

Date:   08 / 29 / 2020