```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS BRAVO,

                    Movant,

-against-

UNITED STATES OF AMERICA,

                    Respondent.

1:22-cv-7393-GHW
1:18-cr-0283-GHW

MEMORANDUM OPINION
& ORDER

GREGORY H. WOODS, United States District Judge:

      Petitioner Luis Bravo defrauded victims for nearly five years by operating a bogus media company called "Westlake Media Group." On June 2, 2021, Mr. Bravo pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. The Court sentenced Mr. Bravo on the same day to time served, followed by a term of three years of supervised release. The Court entered judgment on June 7, 2021. Mr. Bravo did not appeal his conviction. On August 28, 2022, Mr. Bravo filed this petition, arguing that his rights to a fair and speedy trial were violated and ineffective assistance of counsel. The Court designated this petition as a motion for relief under 28 U.S.C. § 2255. Because Mr. Bravo's petition was not filed within the one-year statute of limitations and equitable tolling of the limitations period is not warranted, the petition is DENIED.

## BACKGROUND

      On April 11, 2019, Mr. Bravo was indicted on charges of mail fraud, wire fraud, and bank fraud that was alleged to have occurred between November 2012 and July 2017. Dkt. No. 2.[1] Mr. Bravo was arrested in the Dominican Republic on September 23, 2019. He was detained there until

---

[1] Unless otherwise noted, all docket citations refer to the criminal proceeding, 1:18-cr-283-GHW.

he was extradited to the United States. He had an initial appearance before Magistrate Judge Kevin Nathaniel Fox in the Southern District of New York on October 3, 2019—just 10 days after his arrest. Dkt. No. 6. On the same day, Judge Fox ordered Mr. Bravo's release on bail. *Id.*

The parties appeared in person for an initial conference before the Court on October 7, 2019. Dkt. No. 15. At that conference, the Court granted the defendant's request to schedule another status conference two months later, to permit the defendant to review discovery. Dkt. No. 15 at 5:14-6:23. That conference was scheduled to take place on December 13, 2020. On December 12, 2020, the Court adjourned the conference to January 31, 2021 at the request of defendant's counsel. Dkt. Nos. 18, 19. At the January 31, 2021 conference, the parties appeared in person and requested a further adjournment. Counsel for Mr. Bravo described the reasons why the defendant was seeking the requested adjournment at length. Dkt. No. 21.[2] The Court granted the parties' request to reconvene, scheduling the next conference for March 9, 2020. The parties again appeared before the Court on March 9, 2020. At the conference, the parties requested a further adjournment to April 9, 2020. Dkt. No. 27 ("MS. GIWA: Mr. Bravo is just wrapping up his review of all the discovery. And so we're proposing April 9th at 4 p.m. just for one final conference date.").

Shortly after the March 9, 2020 conference, the global pandemic hit New York City—hard. The Court issued an order on March 23, 2020 directing the parties to submit a status update with the parties' positions regarding how best to proceed with the matter in light of the pandemic. Dkt.

---

[2] Dkt. No. 21 at 2:24-3:20. ("MS. WILLIS: There were several things initially that prevented us from beginning the process of reviewing with Mr. Bravo at the time that the first production was made. Mr. Bravo had some health issues and the like that took up a great deal of his time, and he wasn't able to come in as much as we might have wanted. We have, of late, both counsel and Mr. Bravo, together and independently, been reviewing the discovery. We have also been doing our own independent investigation, and there have been some documents that we have been attempting to get, both here and in the Dominican Republic. And the last piece is that we have, just of late, begun discussions with the government to see if there's a potential pretrial resolution that we could come to. So I am waiting for a Pimentel letter from the government, which I assume I will have quite shortly, to be able to review that with Mr. Bravo and see if this is something that can be resolved short of trial or otherwise. So what we had contemplated, and hoped the Court would agree to, is another conference date perhaps about four weeks, if not six . . . .")

No. 23.  In response, on April 6, 2020, the parties submitted a joint request to adjourn the April 9, 2020 status conference for approximately 60 days "with leave to contact the Court before the next scheduled conference to arrange a change of plea proceeding, provided the parties and the Court determine that such a proceeding can occur remotely."  Dkt. No. 24.  In its letter conveying the parties' request for an adjournment, the Government informed the Court that "Defense counsel advises that Mr. Bravo intends to plead guilty, but due to the ongoing health crisis, defense counsel have not yet been able to comprehensively review the plea agreement with Mr. Bravo."  *Id.*  The Court granted the parties' request and scheduled another conference on June 11, 2020.  Dkt. Nos. 25, 26.

On June 8, 2020, the Court entered an order inviting defense counsel to advise the Court if Mr. Bravo wished to conduct the upcoming conference by remote means.  Dkt. No. 28.  The Court's order contained instructions regarding how to proceed in the event that he was willing to do so.  *Id.*  In response, Mr. Bravo's counsel wrote that he "would consent to a remote proceeding, however, the parties have reached an agreement with respect to a pretrial resolution which eliminates the need for an additional pretrial conference."  Dkt. No. 29.

The Court held a remote conference on June 11, 2020 at which the parties, including Mr. Bravo, appeared by remote means.  Dkt. No. 38.  During the June 11, 2020 conference, counsel for the United States expressed the Government's view that the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), required that any plea be accepted in person.  *Id.* at 8:21-9:7.[3]  Defense counsel agreed with the Government's

---

[3] "MS. JOHNSON: Under the CARES Act, a felony plea can be conducted over video or telephone if there's a finding by the Court that, for a specific reason, the plea cannot be further delayed without serious harm to the interests of justice.  And while I understand that Mr. Bravo would like to move the case along, and I'm certain that counsel and the Court have similar interests, the government's view is that it is not a specific reason that a remote proceeding should occur in this case.  Mr. Bravo is out on bail, and we would certainly like to schedule the change of plea proceeding, but our view is that it should be conducted in person once the court opens for personal appearances."

3

interpretation of the requirements of the CARES Act. *Id.* at 10:15-20 ("THE COURT: First, counsel for defendant, do you take issue with the government's statement regarding the applicable legal standard under the CARES Act for me to conduct a plea by remote means? MS. GIWA: No, your Honor. This is Tamara Giwa. That's also my reading of the CARES Act."). At the suggestion of the parties, the Court scheduled an in-person plea for July 21, 2020.

On July 21, 2020, defense counsel wrote the Court to request an adjournment of the July 21, 2020 plea. Dkt. No. 35. Counsel for Mr. Bravo wrote that "Mr. Bravo and counsel have underlying health issues that create significant concerns about the risks associated with appearing in person in the courthouse." *Id.* Defense counsel also wrote that

> Mr. Bravo intends to change his plea, and is eager to proceed in this matter in a timely manner. To that end, we respectfully propose that the Court order a Pre-Sentence Investigation so that the Court can proceed to a combined plea and sentencing once normal court operations resume. The Government does not object to this request. We request that the plea and sentencing be scheduled for November 20, 2020 at 11:00 am, if that is a convenient time for the Court.

*Id.* The Court granted the defendant's request and scheduled the plea to take place in person on the requested date. Dkt. No. 37.

On November 6, 2020, the defendant wrote requesting another adjournment of the plea and sentencing, for reasons unrelated to the pandemic: "The reason for the request is that we are still awaiting documents that are essential to the defense sentencing submission." Dkt. No. 40. The Court granted the defendant's request, adjourning the in-person plea to December 17, 2020. Dkt. No. 41. That adjournment request was followed by three more joint requests by the parties for extensions of time. Dkt. Nos. 43, 45, 48. Each time that the parties requested an adjournment, the defendant consented to the exclusion of time under the Speedy Trial Act, and the Court excluded time.

The Court conducted a joint plea and sentencing hearing on June 2, 2021. The Court sentenced Mr. Bravo principally to time served. Dkt. No. 53. As a result, Mr. Bravo spent no time

incarcerated as a result of his offenses beyond the time spent incarcerated in the Dominican Republic through his extradition and release following his initial appearance in the Southern District of New York. The Court also sentenced Mr. Bravo to serve three years of supervised release. *Id.*

After his conviction, Mr. Bravo did not appeal his sentence. But he took the opportunity to make a number of filings with the Court to request modifications of his supervised release to permit him to travel internationally. On June 30, 2021, shortly after his sentencing, Mr. Bravo requested permission to travel to the Dominican Republic. Dkt. No. 57. The Government and the Probation Department opposed the modification, noting that at the time Mr. Bravo did not have a passport and that he did not have enough experience with supervised release for the Probation Department to be able to assess the request. Dkt. No. 58. The Court denied Mr. Bravo's request for substantially those reasons. Dkt. No. 59.

Mr. Bravo next contacted the Court through counsel requesting a modification of the conditions of his supervised release on December 7, 2021, again asking for leave to travel abroad for approximately three weeks at the end of the year for medical treatment. Dkt. No. 60. The Court granted the request the same day. Dkt. No. 61. Mr. Bravo's counsel requested another modification of the defendant's supervised release to permit further international travel on January 26, 2022. Dkt. No. 63. The Court granted that request the same day, permitting Mr. Bravo to travel internationally for approximately three weeks. Dkt. No. 64. And on March 29, 2022, Mr. Bravo's counsel requested that the Court modify the conditions of his supervised release to permit him to travel to the Dominican Republic for medical care with only the permission of his probation officer, obviating the need to seek that relief from the Court. Dkt. No. 66. The Court granted the request. Dkt. No. 67.

And on June 20, 2022, Mr. Bravo, through counsel, filed a motion for the Court to terminate his supervised release early. Dkt. No. 68. The application noted that "Mr. Bravo has maintained

regular communication with the Probation Office, and has been compliant with the terms of his supervision. He has paid his restitution obligation in its entirety, and has traveled out of the country for medical purposes without incident." *Id.* The Court denied the request the next day, noting that the application pointed to "no new or unforeseen circumstances, and no exceptionally good behavior or other factors that might warrant early termination." Dkt. No. 69 at 2.

This petition followed just over 2 months later. Mr. Bravo filed a complaint—which the Court has construed as a petition under 28 U.S.C. § 2255—on August 28, 2022. 1:22-cv-7393, Dkt. No. 1. He filed an amended complaint on September 2, 2022 (the "Petition"). 1:22-cv-7393, Dkt. No. 2. In his Petition, Mr. Bravo claims that the COVID-19 pandemic forced the court to close and that he was "locked out of the courthouse until he was forced to take a guilty plea **1 YEAR AND 10 MONTHS AND 8 DAYS LATER** in clear violation of his 6th Amendment right to a fair and speedy trial."[4] 1:22-cv-7393, Dkt. No. 2, at 2 (emphasis in original). Mr. Bravo also asserts that he was not allowed to have phone or video conferences, as provided under the CARES Act, which, he asserts, resulted in a "further" violation of his Sixth Amendment rights.[5] *Id.*

Mr. Bravo also asserts that because the COVID-19 pandemic made it "impossible for normal court operations to continue," he was unable to have in-person meetings with his defense counsel, inspect the Government's evidence properly, or fully prepare for trial. *Id.* Mr. Bravo asserts

---

[4] As described above, the record of the case is inconsistent with this assertion. Mr. Bravo's counsel first informed the Court that he wished to take a plea on June 8, 2020—less than three months after the outset of the pandemic. Mr. Bravo's counsel joined in, or made, all requests for adjournments and never suggested that Mr. Bravo wished to proceed to trial. The Government wrote the Court on April 6, 2020 that Mr. Bravo's counsel had informed the Government of his intention to accept a plea.

[5] As described above, the record of this case is not fully consistent with this assertion. Mr. Bravo participated in two remote conferences during the pandemic. However, the Court concluded, without objection, that Mr. Bravo's plea could not be taken by remote means. The CARES Act specifically provides that video or telephone felony pleas and sentencings shall be allowed only if there are "specific reasons that the plea . . . cannot be further delayed without serious harm to the interests of justice." Pub. L. 116–136 § 15002(b)(2)(a) (Mar. 27, 2020). Because Mr. Bravo had been released on bail since his initial appearance, the Court could not make the finding required to permit a remote plea under the CARES Act.

that because of the issues presented by the pandemic and his deteriorating health, he decided to accept the Government's plea offer. *Id.*

Mr. Bravo's Petition asserts that his rights to a fair and speedy trial were violated. The Petition can also be construed to raise a claim that his counsel was ineffective as a result of the delayed review of discovery and the delay in the Court's acceptance of the plea. The relief that he seeks is to "dismiss with prejudice [his] criminal conviction." *Id.* Because Mr. Bravo seeks to vacate his federal conviction, the Court issued an order on September 2, 2022 designating this action as a petition for relief under 28 U.S.C. § 2255. Dkt. No. 70. The Court provided Mr. Bravo the opportunity to either notify the Court in writing if he wished to withdraw the petition, or to file a declaration showing cause why the petition should not be dismissed as time-barred. Mr. Bravo chose the latter path: on September 9, 2022, he filed a declaration detailing why the petition should not be dismissed as time-barred. Dkt. 71.

## DISCUSSION

### A. This Petition is Time-Barred under 28 U.S.C. § 2255

Because Mr. Bravo is proceeding *pro se*, his submissions are to be "construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

A federal prisoner seeking relief under Section 2255 must generally file a motion within one year from the latest of four benchmark dates: (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the right asserted is initially recognized by the Supreme Court, if it has been made retroactively available to cases on collateral review; *or* (4) when the facts supporting the claim(s) could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2255(f).

Mr. Bravo's judgment of conviction was filed on June 2, 2021, and entered on June 7, 2021. "[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires." *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) Because Mr. Bravo did not file an appeal, his conviction became final on June 21, 2021, 14 days after the judgment was entered. *See* Fed. R. App. Pro. 4(b)(1) (allowing 14 days to file notice of appeal from judgment of conviction). Mr. Bravo filed this action on August 28, 2022, more than one year and two months after his judgment became final. As a result, Mr. Bravo's petition is time-barred unless equitable tolling of the statute of limitations is warranted.[6]

### B. There is no Basis to Toll the Statute of Limitations

There is no basis for equitable tolling of the statute of limitations in this case. The one year deadline for the filing of a petition established pursuant to 28 U.S.C. § 2255(f) is subject to equitable tolling in appropriate cases. *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001); *see also Holland v. Florida*, 560 U.S. 631, 645 (2010). "Equitable tolling applies only in the rare and exceptional circumstance." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotations and modifications omitted). To qualify for equitable tolling, "the petitioner must establish that 'extraordinary circumstances prevented him from filing his petition on time,' and that he 'acted with reasonable diligence throughout the period he seeks to toll.'" *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004); *see also Holland*, 560 U.S. at 649.

The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). "Whether a circumstance is extraordinary is based not on 'how unusual the circumstance alleged to warrant

---

[6] There is no basis to conclude that the other triggering events described in 28 U.S.C. § 2255(f) apply here. The Court is unaware of any government-imposed limitation that prevented the making of the motion. This court has accepted filings throughout the COVID-19 pandemic. This case does not involve a right that has been recently recognized by the Supreme Court. And the facts related to the petition have, as described above, were known to Mr. Bravo prior to the entry of judgment.

8

tolling is among the universe of prisoners, but rather[,] how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Id.* (*quoting Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)).

Furthermore, the petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). In other words, there must be some "link of causation between the extraordinary circumstances and the failure to file." *Gunn v. Aquafredda*, No. 19-CV-10039 (CS), 2021 WL 3115488, at *4 (S.D.N.Y. July 21, 2021). "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d at 134.

Equitable relief may be "awarded in the court's discretion only upon consideration of all the facts and circumstances." *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 965 (2d Cir. 1981). The Court's decision to apply or decline to apply equitable tolling is generally reviewed for abuse of discretion. *Belot v. Burge*, 490 F.3d 201, 206 (2d Cir. 2007).

Mr. Bravo submitted a declaration to support his claim for equitable tolling (the "Bravo Declaration"). Dkt. No. 71. Several paragraphs of the declaration describe events that occurred prior to the entry of judgment on June 21, 2021. *See, e.g.* Bravo Declaration ¶¶ 1-6. Events that occurred prior to the entry of judgment explain little about the reasons that Mr. Bravo was unable to file a habeas petition following the entry of judgment.

Read liberally, Mr. Bravo's declaration offers several cognizable justifications for his claim for equitable tolling. First, he notes issues with his health. He writes: "After Bravo's sentencing on June

9

2, 2021, Defendant Bravo had to begin the process of stabilizing his health due to injuries he suffered during his arrest and detention at the very beginning of United States v. Bravo." Bravo Declaration ¶ 7.  He later provides some detail regarding the nature of his health issues, referring to "Defendant Bravo's brain injury from his pre-arraignment detention in a cage." Bravo Declaration at ECF 5.  And he attaches to the declaration an email he wrote to his counsel on February 5, 2021 in which he wrote the following:  "losing my hearing and have a brain injury . . . I have a lung injury that the doctors here resorted to treating it with an asthma inhaler." Bravo Declaration Ex. A.

Second, Mr. Bravo states that, after final judgment was entered, he "had to focus his efforts to pay his court ordered restitution in full." *Id.* ¶ 7.  Third, Mr. Bravo's declaration asserts that he delayed because was unaware of the legal basis for this application until recently.  He writes that the case law establishing a basis the asserted speedy trial violation that he wishes to assert here only developed recently.  "Since there has never been an event like Covid-19 in America, the preparation and supporting cases needed to even begin this motion under review did not even exist[] until now."  He notes that "Courts/districts across America are only now addressing the 6th Amendment violations from 2020 and 2021." *Id.* ¶¶ 11, 12.

None of the grounds asserted by Mr. Bravo in his declaration justify equitable tolling.  Mr. Bravo has failed to show that any "extraordinary circumstance" prevented him from filing his application timely.  And he has provided no evidence to show that he has pursued his rights diligently after the date of his final judgment.

Mr. Bravo's health issues do not justify equitable tolling.  Mr. Bravo does not explain how any of the conditions that he describes deterred him from filing his petition timely.  *See, e.g.*, *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (holding that, while "medical conditions, whether physical or psychiatric, can manifest extraordinary circumstances," a petitioner must demonstrate how those circumstances prevented them from filing timely); *Cannon v. Kuhlmann*, No. 99CIV.10101(DLC), 2000

WL 1277331, at *2 (S.D.N.Y. Sept. 7, 2000) (holding that it is insufficient to claim health issues without showing that those issues rendered the petitioner "unable to pursue his legal rights during the relevant time period"). Moreover, the other facts asserted in Mr. Bravo's declaration, as well as the procedural history of this case, do not support the conclusion that his health issues deterred him from making a timely submission. In his declaration, he asserts that, notwithstanding the health issues, he was working to fulfill his restitution obligations. He also wrote the Court shortly after the date on which judgment. He engaged with his counsel, who submitted several requests for modifications of the conditions of his supervised release. And Mr. Bravo requested, and was granted leave, to travel internationally on several occasions. Particularly against this backdrop, Mr. Bravo's conclusory assertions regarding his health issues do not suffice to show that those issues deterred him from filing timely.

Mr. Bravo's assertion that his late filing is justified because he was focused on "his efforts to pay his court ordered restitution in full . . ." does not justify equitable tolling. Bravo Declaration. ¶ 7. Again, he does not provide any detail to show how this obligation deterred him from filing timely. And while an evaluation of whether a circumstance is extraordinary does not focus on "how unusual the circumstance alleged to warrant tolling is among the universe of prisoners," *Diaz*, 515 F.3d at 154, the Court must observe that the requirement that a defendant comply with his restitution obligations after release is ordinary, not extraordinary. Without more factual enhancement, the mere fact that Mr. Bravo had to work to meet his restitution obligations to any victims of his criminal conduct is not an extraordinary circumstance that warrants tolling.

Third, Mr. Bravo's assertion that he was unaware of the specific legal basis for his petition—accepted as true—does not justify equitable tolling. "Such a limitation, under which numerous *pro se* inmate petitioners suffer, does not amount to 'extraordinary circumstances' and accordingly, courts have repeatedly rejected such an argument." *Cannon v. Kuhlmann*, No. 99CIV.10101(DLC), 2000 WL

11

Case 1:22-cv-07393-GHW   Document 6   Filed 09/30/22   Page 12 of 14

1277331, at *2 (S.D.N.Y. Sept. 7, 2000) (collecting cases). Moreover, the Court observes that other facts reported in Mr. Bravo's declaration contradict his assertion that he was unaware of the basis for this petition earlier. Mr. Bravo asserts that he raised a concern regarding an asserted violation of his speedy trial rights in an email to his counsel written on February 5, 2021. Bravo Declaration Ex. A. And "[o]nce Bravo was sentenced . . . on June 2, 2021, Defendant Bravo wrote a letter to on Judge Woods stating that . . . his 6th Amendment / Speedy Trial Act protections had been violated during United States v. Bravo." *Id.* ¶ 8. "Defendant Bravo knew many things during United States v. Bravo violated his civil rights and he began the process of formally addressing these violations in a civil action now filed in this district." *Id.* ¶ 9. In sum, Mr. Bravo's declaration does not support his assertion that he was unaware of a violation of his rights within the statutory time period; in fact, it says the opposite. And even read in the light most favorable to him, his request for equitable tolling based on his asserted lack of knowledge regarding the law as a *pro se* litigant does not warrant equitable tolling.

Mr. Bravo also failed to show that he has been pursuing his rights diligently. He says nothing on that point in his declaration other than that he "knew many things . . . violated his civil rights and he began the process of formally addressing these violations in a civil action now filed in this district." *Id.* This statement does not support the conclusion that he acted diligently. It says merely that he "began" the work—it does not provide facts to support the conclusion that he worked diligently to complete the work once begun. It is worthy of note that the record of Mr. Bravo's case does not reveal substantial barriers to his ability to pursue his rights diligently. He is not, and has not been, incarcerated following his extradition to the United States. During the period he seeks to toll, Mr. Bravo communicated with the Court by letter multiple times, both directly, and through his counsel. To his credit, Mr. Bravo was able to make his restitution payments. Furthermore, Mr. Bravo requested leave to take multiple extended trips to the Dominican Republic. Mr. Bravo's access

to the Court and counsel when filing the requests related to his conditions of supervised release, along with his ability to work, travel, and pay restitution highlight the inadequacy of his claim for equitable tolling.

Because Mr. Bravo has failed to show that some extraordinary circumstance prevented him from filing this application timely, or that he has been pursuing his rights diligently, the Court concludes that equitable tolling of the statute of limitations is inappropriate in this case.

### C.  The "Savings Clause" of 28 U.S.C. § 2255(e) Does Not Apply

The "savings clause" of § 2255(e) does not apply here because Mr. Bravo does not contend that he is innocent.  The savings clause "allows a prisoner to avoid the gatekeeping provisions of section 2255 . . . if section 2255 'appears . . . inadequate or ineffective to test the legality of his detention.'"  *Love v. Menifee*, 333 F.3d 69, 73 (2d Cir. 2003) (quoting 28 U.S.C. § 2255(e)).  The savings clause authorizes a petition under § 2241 "only when § 2255 is unavailable *and* the petition is filed by an individual who (1) 'can prove actual innocence on the existing record,' and (2) 'could not have effectively raised [his] claim[ ] of innocence at an earlier time.'"  *Dhinsa v. Krueger*, 917 F.3d 70, 81 (2d Cir. 2019) (alterations in original) (internal quotation marks omitted) (quoting *Cephas v. Nash*, 328 F.3d 98, 104 (2d Cir. 2003)).  Mr. Bravo does not contend that he is actually innocent.  Therefore, the "savings clause" of 28 U.S.C. § 2255(e) is unavailable to him.

### CONCLUSION

Because the Petition was not filed timely, the Petition is DENIED.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  Mr. Bravo has not made a substantial showing of the denial of a constitutional right, so the Court denies a certificate of appealability under 28 U.S.C. § 2253.

The Clerk of Court is directed to enter judgment for the United States and to close Mr. Bravo's civil action, *Bravo v. United States*, Case No. 1:22-cv-7393-GHW. The Clerk of Court is further directed to mail a copy of this order to Mr. Bravo and to note service on the docket.

SO ORDERED.

Dated: September 30, 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge